**Kenneth F. BONNY, Francesca B.B. Bonny and Robert D. Flesvig, Plaintiffs,**

v.

**The SOCIETY OF LLOYD'S, Harris Bank Glencoe–Northbrook, N.A., Harris Trust and Savings Bank, Bank of Montreal, Northfield Venture, Inc., Robert B. King, Alan J. Hunken, Lime Street Underwriting Agencies Ltd., Robin C. Kingsley, Robert C. Hallam, Patrick M. Corbett, and Bankside Underwriting Agencies Ltd., Defendants.**

No. 91 C 5525.

United States District Court, N.D. Illinois, E.D.

Feb. 24, 1992.

Theodore William Grippo, Jr., Roy T. Simmons, Grippo & Simmons, Chicago, Ill., for Kenneth F. Bonny, Francesca B. Bonny and Robert D. Flesvig.

Joseph E. Coughlin, Timothy M. Maggio, Lord, Bissell & Brook, Chicago, Taylor R. Briggs, Leboeuf, Lamb, Lieby & MacRae, New York City, for Society of Lloyd's.

Richard Alan Wohlleber, George F. Venci, Jr., Chapman & Cutler, Chicago, Ill., for Harris Bank Glencoe, Harris Trust & Sav. Bank and Bank of Montreal.

Bruce Frederick Hoffman, Jay M. Pollak, Pollak & Hoffman, Ltd., Chicago, Ill., for Northfield Venture, Inc. and Robert B. King.

Joseph E. Coughlin, Timothy M. Maggio, Lord, Bissell & Brook, John Patrick McGahey, James Raymond Denniston, Wilson, Elser, Moskowitz, Edelman & Dicker, Chicago, Ill., Taylor R. Briggs, Leboeuf, Lamb, Lieby & MacRae, New York City, for Lime Street Underwriting Agencies, Robin C. Kingsley and Robert C. Hallam.

John Patrick McGahey, James Raymond Denniston, Wilson, Elser, Moskowitz, Edelman & Dicker, Chicago, Ill., Taylor R. Briggs, Leboeuf, Lamb, Lieby & MacRae, New York City, for Patrick M. Corbett and Bankside Underwriting Agencies, Ltd.

Gary Kostow, Suanne P. Hirschhaut, Clausen, Miller, Gorman, Caffrey & Witous, P.C., Chicago, Ill., for Alan J. Hunken.

## ORDER

NORGLE, District Judge.

Before the court are the objections of defendant The Society of Lloyd's ("Lloyd's") and defendants Harris Bank Glencoe–Northbrook, N.A. and Harris Trust and Savings Bank (together "Harris Bank") to Magistrate Judge Gottschall's September 26, 1991 report and recommendation (attached as Appendix A) that plaintiffs Kenneth F. Bonny and Francesca B. Bonny's (the "Bonnys") motion for a preliminary injunction be granted. For reasons that follow, the recommendation is rejected and the Bonnys' motion is denied.

## FACTS

The Bonnys filed the instant lawsuit on August 30, 1991 alleging that they were fraudulently, and in violation of various federal and state securities laws, induced to become members of Lloyd's and to participate as underwriters in several insurance syndicates marketed at Lloyd's.[1] The complaint sought damages, rescission of the Bonnys' membership agreements with Lloyd's, and an injunction barring the defendants, pending the outcome of this case, from drawing upon letters of credit issued by Harris Bank which the Bonnys were required to obtain as a condition of their Lloyd's membership.

---

1. An amended complaint was filed on November 4, 1991 adding plaintiff Robert D. Flesvig and defendant Alan J. Hunken. By stipulation, Flesvig has joined in the Bonnys' motion.

The Bonnys filed the present motion for injunctive relief on September 3, 1991. Pursuant to 28 U.S.C. § 636(b)(1)(B), the Bonnys' motion was referred to the Magistrate Judge. Lloyd's opposition to the Bonnys' motion was limited to one issue: whether forum selection and choice of law clauses in the Bonnys' membership and agency agreements, requiring that all disputes be litigated before English courts or arbitrators under English law, deprived the court of jurisdiction.[2] Lack of jurisdiction, Lloyd's contended, would preclude a finding that the Bonnys had a reasonable likelihood of succeeding on the merits, one of the requirements for injunctive relief.

The Magistrate Judge found that the forum selection clauses should not be enforced. In reaching that conclusion, she first found that freely negotiated forum selection and choice of law clauses must be enforced, unless there were strong countervailing public policy considerations. She found such public policy considerations, however, in a ban on prospective waivers of claims under the Securities Act of 1933, 15 U.S.C. § 77n.

Although the Bonnys could pursue some of their claims in the English courts—including their common law fraud claims and their claims under the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Securities and Exchange Commission Rule 10b–5—the Magistrate Judge found that the Bonnys might be barred there from pursuing their claims under the 1933 Act, 15 U.S.C. § 77l (1), (2). Several English statutes grant various forms of civil immunity to Lloyd's. The Magistrate Judge found that at least one of those statutes could be used to bar the Bonnys' claims under the 1933 Act. Additionally, even though Lloyd's and its related defendants agreed not to seek immunity from the 1933 Act claims, the Magistrate Judge found that an English court could apply the immunity on its own initiative to further English public policy. The Magistrate Judge was not dissuaded from this view by the affidavit of an English barrister submitted on Lloyd's

behalf expressing the opinion that an English court would not rule on a defense not raised by Lloyd's. The affidavit further opined that relief similar to that available under the 1933 Act was available under English common law.

Lloyd's raises three objections to the Magistrate Judge's report and recommendation: (1) United States public policy is not a sufficient basis to block enforcement of an international forum selection clause, (2) Lloyd's would not be immune in England from the 1933 Act claims, and (3) even if Lloyd's could utilize such immunity, the Bonnys would lose nothing because their federal securities law claims are time-barred.

Harris Bank also objects to the issuance of a preliminary injunction, arguing that there was no finding of fraud sufficient to void the Bonnys' entire agreement with Lloyd's and that without such a finding, "the integrity of the clean, irrevocable letter[s] of credit" should not be disturbed.

## DISCUSSION

The Bonnys, in order to obtain a preliminary injunction, must show all of the following: (1) a reasonable likelihood of success on the merits, (2) lack of an adequate remedy at law, (3) that they would suffer injury without an injunction greater than any injury an injunction will cause defendants, and (4) that the injunction will not harm the public interest. *S.E.C. v. Cherif*, 933 F.2d 403, 408 (7th Cir.1991) (citing *Roland Machinery Co. v. Dresser Industries Inc.*, 749 F.2d 380, 386–89 (7th Cir.1984)), *cert. denied*, —— U.S. ——, 112 S.Ct. 966, —— L.Ed.2d —— (1992). Harris Bank contends that as to injunctions against payment on letters of credit, an additional element must be shown—fraud that vitiates the whole transaction. *See Warner v. Central Trust Co., N.A.*, 715 F.2d 1121, 1123 (6th Cir.1983); *Stringer Constr. Co. v. American Ins. Co.*, 102 Ill.App.3d 919,

---

**2.** Lloyd's presses the same issue in its motion to dismiss the amended complaint, currently pending before Magistrate Judge Gottschall.

922–23, 58 Ill.Dec. 59, 62, 430 N.E.2d 1, 4 (1st Dist.1981).

Lloyd's focused on the first element, as did the Magistrate Judge, and this court finds that element dispositive, making it unnecessary to address the other elements. Lloyd's correctly argues that the Bonnys have no likelihood of success on the merits if the forum selection clauses would prevent the case from being heard here.

Forum selection clauses in international agreements eliminate a host of uncertainties and potential inconveniences, and for that reason are "an indispensable element in international trade, commerce and contracting." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 13–14, 92 S.Ct. 1907, 1914, 32 L.Ed.2d 513 (1972). "[C]oncerns of international comity [and] respect for the capacities of foreign and transnational tribunals" further supports enforcement of international forum selection clauses, regardless of whether the results would differ in a foreign court. *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 629, 105 S.Ct. 3346, 3355, 87 L.Ed.2d 444 (1985). Accordingly, such clauses are given "special deference," *In re Oil Spill by the Amoco Cadiz*, 659 F.2d 789, 795 (7th Cir.1981), and must be specifically enforced unless a challenging party can "clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." *M/S Bremen*, 407 U.S. at 15, 92 S.Ct. at 1916.

The Bonnys must therefore show more than inconvenience or a diminished chance of success in England to overcome the forum selection clause. The Magistrate Judge, however, found only that the Bonnys might be unable to litigate some of their claims and might receive a lesser remedy if they win in England. The burden seems to have been put on Lloyd's rather than on the Bonnys, upon whom it belonged. The speculative nature of the harms the Bonnys might suffer cuts against them, not against Lloyd's. Moreover, it is hardly clear that such harms would be sufficient to overcome the forum selection clauses.

The Magistrate Judge found the forum selection clauses unenforceable based on dicta in a footnote in the *Mitsubishi* opinion, 473 U.S. at 637 n. 19, 105 S.Ct. at 1917 n. 19, which stated that forum selection and choice of law clauses that together constituted prospective waivers of statutory antitrust remedies would be void as against public policy. But even assuming that there is a prospective waiver of securities law remedies here, it is doubtful that such a waiver can obviate the strong presumption of validity of the forum selection clauses. This presumption clearly applies when securities law claims are at issue, including claims under the Securities Act of 1933 and the Securities Exchange Act of 1934, both of which contain anti-waiver provisions. *See Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 515–17, 94 S.Ct. 2449, 2455–57, 41 L.Ed.2d 270 (1974).

The anti-waiver provision in the 1933 Act, 15 U.S.C. § 77n, was cited by the Magistrate Judge in support of her finding that the *Mitsubishi* footnote's public policy exception should apply. That finding, however, is contrary to *Scherk* and its guidance that the nature of the contract—i.e. whether the contract was formed entirely within the United States or whether it is a truly international agreement—is the key factor. The contracts containing the forum selection clauses involve the Bonnys' membership in Lloyd's, located in London, England, and their participation in insurance syndicates marketed at Lloyd's. Negotiations over the contracts apparently took place in both Illinois, where the Bonnys reside, and in England. Therefore, without the forum selection and choice of law clauses, there could have been substantial international choice of law questions. In these circumstances, United States securities laws and the public policies they represent do not stand in the way of international forum selection clauses. *See Scherk*, 417 U.S. at 516–20, 94 S.Ct. at 2455–58. Furthermore, there is nothing in the record suggesting that England is a fundamentally unfair forum in which to litigate the Bonnys' claims. *See Carnival Cruise Lines, Inc. v. Shute*, —— U.S. ——, 111 S.Ct. 1522, 1528, 113 L.Ed.2d 622 (1991) (fundamental fairness

scrutiny of chosen forum's relation to the dispute).

In sum, the Bonnys have failed to make a sufficient showing to overcome the presumed validity of the forum selection clauses at issue. They therefore cannot show a reasonable likelihood of success on the merits as they must to obtain a preliminary injunction.

## CONCLUSION

The recommendation of the Magistrate Judge is rejected, and the Bonnys' motion for a preliminary injunction is denied.

IT IS SO ORDERED.

## APPENDIX A

## REPORT AND RECOMMENDATION

GOTTSCHALL, United States Magistrate Judge.

TO THE HONORABLE NICHOLAS J. BUA, one of the Judges of the United States District Court for the Northern District of Illinois.

This matter comes before the court on plaintiffs' motion for a preliminary injunction to enjoin The Society of Lloyd's ("Lloyd's") from drawing upon funds secured by letters of credit posted by plaintiffs and to enjoin the bank defendants from releasing such funds. The injunction is sought principally to preserve the availability of the funds in question to satisfy any judgment plaintiffs may recover in the underlying suit, in which plaintiffs charge Lloyd's and associated defendants with violations of sections 12(1) and 12(2) of the Securities Act of 1933, 15 U.S.C. § 77$l$(1), (2), section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 of the Securities and Exchange Commission. Pendent claims of common law fraud, breach of fiduciary duty, common law negligence, breach of contract and violation of New Jersey's blue sky laws are also asserted.

Defendants' opposition to plaintiffs' motion for a preliminary injunction has been limited to one issue: whether this court lacks jurisdiction over this controversy because the Agency Agreement and Members' Agent's Agreement, which define the parties' relationship, contain forum selection and choice of law clauses providing that English law shall govern all disputes and requiring the submission of all disputes to the exclusive jurisdiction of an English court or arbitrator.[1]

The matter was heard on that basis on September 3 and 4, and was continued until September 6 for the limited purpose of allowing defendants to present proof of English law on the question of whether the plaintiffs, if required to litigate in England, would have a remedy. On September 5, in addition to materials concerning English law, defendants submitted material suggesting that plaintiffs' claims are time-barred. Defendants maintain that if plaintiffs' claims are time-barred under U.S. law, remitting plaintiffs to whatever remedies they may have under English law cannot injure them, since they cannot prevail in an American court. As the court indicated to the parties in its oral remarks, this issue was raised by defendants too late to allow for an adequate adversary presentation within the schedule the court had ordered. While the limitations issue is a substantial one, and is relevant to the critical issue of whether plaintiffs have shown a likelihood of success on the merits, the court does not believe it is any more relevant to the issue of whether plaintiffs' claims should proceed in this forum than is any other matter of defense. If defendants wish the court to consider this issue (or any other matter relevant to the question of whether plaintiffs have shown a likelihood of success on the merits), the court will hear those issues provided adequate notice to plaintiffs and a means of insuring the maintenance of the status quo during the time necessary for the development of an adequate record.

1. The parties refer to this issue as "jurisdiction." It is not clear that it is in fact a jurisdictional question.

The court thus turns to the issue presented by all parties as the key question for the court's consideration on plaintiffs' motion for a preliminary injunction: whether the court should decline to act given the forum selection and choice of law clauses in the parties' agreements.

The Supreme Court has made abundantly clear in a series of recent decisions that forum selection clauses and choice of law clauses in freely negotiated contracts should be enforced, absent strong public policy reasons to the contrary. *See The Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1 [92 S.Ct. 1907, 32 L.Ed.2d 513] (1972) (clause in towage contract selecting English forum should be enforced even though an English court would likely give more weight than would an American court to contractual exculpatory clauses favoring German tug owner over American rig owner); *Scherk v. Alberto–Culver Co.*, 417 U.S. 506 [94 S.Ct. 2449, 41 L.Ed.2d 270] (1974) (contractual agreement to arbitrate disputes before the International Chamber of Commerce in Paris under Illinois law should be enforced for the resolution of fraudulent misrepresentation claims under the 1934 Securities Exchange Act); *Mitsubishi Motors Corp. v. Soler Chrysler Plymouth, Inc.*, 473 U.S. 614 [105 S.Ct. 3346, 87 L.Ed.2d 444] (1985) (contractual provision requiring submission of disputes to arbitration in Japan, under Swiss law, held enforceable as to car dealer's Sherman Act defense to breach of contract claims); *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477 [109 S.Ct. 1917, 104 L.Ed.2d 526] (1989) (predispute agreement to arbitrate claims held enforceable as to claims arising under the 1933 Securities Act, overruling *Wilko v. Swan*, 346 U.S. 427 [74 S.Ct. 182, 98 L.Ed. 168] (1953)). A key consideration in many of these decisions was the Court's view that in contracts touching on multiple countries and jurisdictions, forum selection and choice of law clauses eliminate significant uncertainties and serve important policy interests. *See Carnival Cruise Lines, Inc. v. Shute*, —— U.S. ——, 111 S.Ct. 1522, 1527 [113 L.Ed.2d 622] (1991). As the

Court stated in *Mitsubishi, supra*, "[c]oncerns of international comity, respect for the capacities of foreign and transnational tribunals, and sensitivity to the need of the international commercial system for predictability in the resolution of disputes require that we enforce the parties' agreement, even assuming that a contrary result would be forthcoming in a domestic context." 473 U.S. at 629 [105 S.Ct. at 3355].

Despite this strong commitment to the enforcement of forum selection and choice of law provisions in international contracts, the Supreme Court has consistently cautioned that such clauses should not be enforced if enforcement would cause injustice, unfairness or a violation of important American public policy interests. The Court's willingness to sustain forum selection provisions has depended on its determination, particularly in the case of claims based on American statutory rights, that resort to the contractually-agreed upon forum will provide a means for vindicating those rights. As the Court stated in *Mitsubishi*, "By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." 473 U.S. at 628 [105 S.Ct. at 3355]. *See also Rodriguez de Quijas, supra*, 490 U.S. at 481 [109 S.Ct. at 1920].

The difficulty presented by the instant case arises out of the special position of Lloyd's and its underwriters under English law. Plaintiffs have asserted that two statutes, the English Financial Services Act of 1986 and the Lloyd's Act of 1982, immunize Lloyd's and its underwriters from liability on plaintiffs' securities claims. Plaintiffs argue that if they are compelled to litigate in England, they will be barred from any redress against Lloyd's and its underwriters.

The Financial Services Act ("FSA") appears on its face to be a comprehensive regulatory statute governing the securities industry. It contains various regulatory requirements and penalties. It also contains this provision:

*Other Exemptions*

§ 42 Lloyd's

The Society of Lloyd's and persons permitted by the Council of Lloyd's to act as underwriting agents at Lloyd's are exempted persons as respects investment business carried on in connection with or for the purpose of insurance business at Lloyd's.

Initially, it appeared to the court, as announced orally in open court on September 6, that this section would preclude securities actions against Lloyd's; Lloyd's was apparently exempt from regulation under the only securities legislation brought to the court's attention. Subsequent to that hearing, however, the Lloyd's defendants presented the affidavit of John Lewis Powell, an English barrister and Queen's Counsel, with a commercial law practice and expertise in the areas of financial services and professional negligence. Mr. Powell averred the following concerning the Financial Services Act:

1) The Financial Services Act of 1986 ("the FSA") establishes a system of statute-backed self-regulation of the investment business. Under section 42 of the FSA, "The Society of Lloyd's and persons permitted by the Council of Lloyd's to act as underwriting agents at Lloyd's are exempted persons as respects investment business carried on in connection with or for the purpose of insurance business at Lloyd's." According to Mr. Powell, the rationale for the Lloyd's exemption is to avoid regulatory duplication, given that Lloyd's and Lloyd's underwriting agents are regulated under the Lloyd's Act of 1982. Nevertheless, certain provisions of the FSA are applicable to Lloyd's, specifically, sections 47, 56, 59 and 61.

2) Section 47 creates *criminal* penalties for misleading statements made knowingly or recklessly; a reasonable belief that words or conduct would not create a misleading impression may be raised as a defense to a section 47 charge. There are geographical limitations on the reach of section 47, requiring in essence that the misrepresentation be made in or from the United Kingdom or that the affected person be in the United Kingdom.

3) Section 56 of the FSA prohibits "unsolicited calls" and provides for various civil sanctions for the violation of its prohibitions.

4) Section 59 allows the Secretary of State of Trade and Industry to issue a disqualification directive prohibiting the Society of Lloyd's and Lloyd's underwriting agents from employing persons judged to be unfit.

5) Section 61 permits the court, on application of the Secretary of State, to enjoin the contravention or threatened contravention of sections 47, 56 or 59 by Lloyd's or Lloyd's underwriting agents. The section appears to include, among the authorized injunctions, remedial orders for past violations and various disgorgement, restitution and compensation orders.

The Lloyd's defendants maintain that section 47 provides remedies similar to those provided by the American securities laws. This does not appear to be the case. Mr. Powell's affidavit indicates that section 47 provides for *criminal* penalties only. Moreover, given its geographical limitations, it is doubtful that section 47 would reach misrepresentations made in the United States to United States citizens. Section 61 would appear to have no application here, given that it requires the initiation of litigation by the Secretary of State.

The Lloyd's defendants point out that the "exempted person" status given to the Society of Lloyd's under the FSA does not protect Lloyd's from liabilities arising other than under the FSA. Based on § 61(9) of the FSA,[2] this appears to be the case. Accordingly, the court concludes that it was in error in initially believing that the FSA exemption barred all securities actions against Lloyd's. Inasmuch as no evidence has been presented of any other statute which affirmatively provides for suit against Lloyd's, however, the court is left to conclude that plaintiffs would retain

---

**2.** This section preserves other remedies.

only whatever common law remedies are otherwise available under English law.

This does not end the matter. The situation is complicated by another statute, the Lloyd's Act. The Lloyd's Act provides in relevant part as follows:

*SECTION 14: Liability of the Society, etc*

DATE–IN–FORCE: 23 July 1982

(1) This section shall only exempt the Society from liability in damages at the suit of a member of the Lloyd's community.

(2) For the purposes of this section a member of the Lloyd's community shall be—

(a) a person who is—

  (i) a member of the Society;

  (ii) a Lloyd's broker;

  (iii) an underwriting agent;

  (iv) an annual subscriber;

  (v) an associate;

  (vi) a director or partner of a Lloyd's broker or an underwriting agent;

  (vii) a person who works for a Lloyd's broker or underwriting agent as a manager; or

(b) a person who has been a member of the Lloyd's community in one or more of the capacities listed in paragraph (a) above; or

(c) a person who is seeking or who has sought to become a member of the Lloyd's community in one or more of the capacities listed in paragraph (a) above.

(3) Subject to subsections (1), (4) and (5) of this section, the Society shall not be liable for damages whether for negligence or other tort, breach of duty or otherwise, in respect of any exercise of or omission to exercise any power, duty or function conferred or imposed by Lloyd's Acts 1871 to 1982 or any bylaw or regulation made thereunder—

(a) in so far as the underwriting business of any member of the Society or the costs of his membership or the business of any person as a Lloyd's broker or underwriting agent may be affected; or

(b) in so far as related to the admission or non-admission to, or the continuance of, or the suspension or exclusion from, membership of the Society; or

(c) in so far as related to the grant, continuance, suspension, withdrawal or refusal of permission to carry on business at Lloyd's as a Lloyd's broker or an underwriting agent or in any capacity connected therewith; or

(d) in so far as related to the exercise of, or omission to exercise, disciplinary functions, powers and duties; or

(e) in so far as relates to the exercise of, or omission to exercise, any powers, functions or duties under bylaws made pursuant to paragraphs (21), (22), (23), (24) and (25) of Schedule 2 to this Act;

unless the act or omission complained of—

  (i) was done or omitted to be done in bad faith; or

  (ii) was that of an employee of the Society and occurred in the course of the employee carrying out routine or clerical duties, that is to say duties which do not involve the exercise of any discretion.

(4) Nothing in this section shall affect any liability of the Society in respect of the death of or personal injury to any person, and for the purposes of this section the expression "personal injury" means bodily injury, any disease and any impairment of a person's physical or mental condition.

(5) Nothing in this section shall exempt the Society from liability for libel or slander.

(6) For the purposes of this section "the Society" means the Society itself and also any of its officers and employees and any person or persons in or to whom (whether individually or collectively) any powers or functions are vested or delegated by or pursuant to Lloyd's Acts 1871 to 1982.

No exegesis of this statute has been provided. By its literal terms, § 14 appears to

exempt Lloyd's from liability in damages for any tort, breach of duty or acts or omissions related to the conduct of its business except insofar as bad faith is established. This bad faith exception would presumably save plaintiffs' fraud claims under § 10(b) of the 1934 Securities Exchange Act, as well as its Rule 10b–5 and common law fraud claims. Insofar as this court can determine, however, it would exempt Lloyd's from liability for violations of the 1933 Securities Act, since liability under § 12(1) and § 12(2) does not require proof of bad faith. *See, e.g., Wolf v. Banco Nacional de Mexico,* 549 F.Supp. 841, 853 (N.D.Cal.1982), *appeal dismissed,* 721 F.2d 660 (9th Cir.1983); *Basile v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 551 F.Supp. 580, 590 (S.D. Ohio 1982). Thus, from what has been presented to this court, it appears that an English court applying English law would hold Lloyd's immune from liability on plaintiffs' 1933 Act claims.

If this is the result, the court has no choice but to conclude that the choice of forum and choice of law clauses at issue cannot be enforced. The 1933 Securities Act provisions asserted by plaintiffs serve important public interests under American law. The complaint in this case asserts that defendants violated these provisions in dealing with American citizens on American soil. It is clear that permitting Lloyd's, by a forum selection clause, to avoid liability for putative violations of the 1933 Act would contravene important American public policy interests.

Moreover, the 1933 Act itself explicitly directs that if this is the effect of the plaintiffs' contracts with defendants, the contracts are void. Section 14 of the Act provides:

> Any condition, stipulation, or provision binding any person acquiring any security to waive compliance with any provision of this subchapter or of the rules and regulations of the Commission shall be void.

15 U.S.C. § 77n.

The Supreme Court addressed this issue in *Mitsubishi.* There, the Supreme Court ruled that if the effect of enforcing a contractual forum selection or choice of law clause is to vitiate a person's right to pursue important statutory remedies under the law of the United States, enforcement is improper.[3]

In addition to the clause providing for arbitration before the Japan Commercial Arbitration Association, the Sales Agreement includes a choice-of-law clause which reads: "This Agreement is made in, and will be governed by and construed in all respects according to the laws of the Swiss Confederation as if entirely performed therein." The United States raises the possibility that the arbitral panel will read this provision not simply to govern interpretation of the contract terms, but wholly to displace American law even where it would otherwise apply. The International Chamber of Commerce opines that it is "[c]onceivabl[e], although we believe it unlikely, [that] the arbitrators could consider Soler's affirmative claim of anticompetitive conduct ... to fall within the purview of this choice-of-law provision, with the result that it would be decided under Swiss law rather than the U.S. Sherman Act." At oral argument, however, counsel for Mitsubishi conceded that American law applied to the antitrust claims and represented that the claims had been submitted to the arbitration panel in Japan on that basis. The record confirms that before the decision of the Court of Appeals the arbitral panel had taken these claims under submission.

We therefore have no occasion to speculate on this matter at this stage in the proceedings, when Mitsubishi seeks to enforce the agreement to arbitrate, not to enforce an award. Nor need we consider now the effect of an arbitral tribu-

---

**3.** *Mitsubishi* dealt with Sherman Act claims. The court views the U.S. public interest in the enforcement of the 1933 Securities Act to be at least as strong and perhaps stronger, given Congress' explicit command in § 14 that prospective waivers of rights under the Act shall be invalid.

nal's failure to take cognizance of the statutory cause of action on the claimant's capacity to reinitiate suit in federal court. *We merely note that in the event the choice-of-forum and choice-of-law clauses operated in tandem as a prospective waiver of a party's right to pursue statutory remedies for antitrust violations, we would have little hesitation in condemning the agreement as against public policy.*

473 U.S. at 637 n. 19 [105 S.Ct. at 3358 n. 19] (emphasis added; citations omitted).

As the above-quoted language suggests, it is not certain that an English court applying English law would invoke the Lloyd's immunity in this case. It is at least theoretically possible that the court would conclude that under English choice of law principles, American law should govern the parties' dispute. There is no evidence, however, that this would be the case, and the court has serious doubts that it is a reasonable possibility. Not only did the parties select English law, which an English court could conclude indicates an intent to be bound by English substantive law, but it appears that the protection of Lloyd's from the interference of tort-type actions not involving fraud represents a deliberate and explicit English public policy choice. The court cannot reasonably conclude, in the absence of supporting evidence, that an English court would decide the case under the 1933 Securities Act and make Lloyd's answerable to American plaintiffs in circumstances in which English plaintiffs would have no remedy. Unlike the situation confronting the Supreme Court in *Mitsubishi*, no one has given this court reason to believe that plaintiffs' claims would be submitted to an English court on the basis of American statutory law.[4]

For the above reasons, the court concludes that plaintiffs have shown a likelihood of success on the merits on the issue of plaintiffs' right to bring suit in this court.

With respect to irreparable injury, the issue is straightforward. If defendants are permitted to withdraw the funds secured by plaintiffs' letters of credit, will plaintiffs lose the possibility of a remedy for their 1933 Act claims? Given the conclusion that it is likely that plaintiffs will prevail on the merits of their jurisdictional argument and be permitted to proceed to trial here, the question becomes whether a judgment in plaintiffs' favor on those claims would be enforced by an English court. The court explicitly put this issue to defendants, making clear its view that if the answer were in the affirmative, it would recommend the denial of plaintiffs' motion, given the balance of harms and public interests involved. Defendants did not offer any evidence concerning English law on the enforcement of foreign judgments, either in general or in the specific case of judgments that might contravene English public policy. The court is thus compelled to conclude that the funds plaintiffs seek to freeze are the only funds likely to be available to satisfy a judgment in plaintiffs' favor. In the court's view, losing all possibility of monetary recompense is substantial irreparable injury.

The court has previously discussed the balance of harms and public policy interests that weigh in the balance here. (See transcript of September 4 at 104–106; transcript of September 6 at 158–159). Briefly summarized, while Lloyd's will not be seriously injured by a delay in the transmission of the approximately $400,000 in question, the injunction sought by plaintiffs, if granted, would render uncertain Lloyd's ability to call on its names' funds, an essential aspect of its venerable way of doing busi-

---

**4.** Because it appears that Lloyd's immunity represents an important English public policy choice, the court is not convinced that the Lloyd's defendants' agreement not to "argue that [plaintiffs' 1933 Act claims] fall within the provisions of § 14 of the Lloyd's Act" adequately assures that the rights sought to be vindicated by the 1933 Act will be adequately protected by an English court. Defendants implicitly suggest that Lloyd's statutory immunity is waiveable. But if the Lloyd's immunity represents English public policy, it is unlikely that a court would disregard it, whether it was argued by Lloyd's or not.

ness. The introduction of delay and uncertainty into Lloyd's ability to call upon the funds required to make good on its obligations would be extremely damaging to its manner of doing business.

In addition, there are significant public policy interests which militate against injunctive relief in this case. They were well-stated by the Supreme Court in *Mitsubishi, see* page 1355, *supra,* and need not be repeated here. This court, however, concludes that these interests must yield to Congress' explicit directive that a contractual provision which has the effect of binding plaintiffs to waive compliance with the 1933 Securities Act is void. 15 U.S.C. § 77n. Further, the Supreme Court in *Mitsubishi,* even in the absence of such an explicit congressional directive, made clear that where choice of forum and choice of law clauses operate in tandem as a prospective waiver of a party's right to pursue statutory remedies under American law, such clauses must be condemned as contrary to American public policy.

On the basis of the issues presented to this court, it is accordingly recommended that plaintiffs' motion for a preliminary injunction be granted. If, however, the court is assured that the status quo will be maintained pending the hearing of defendants' arguments relating to limitations, it would be this court's recommendation that any decision on plaintiffs' motion be deferred pending the resolution of the limitations issue.[5]

Counsel are given ten days from the date hereof to file objections to this Report and Recommendation with the Honorable Nicholas J. Bua. Failure to object constitutes waiver of the right to appeal.[6]

DATED: September 26, 1991

---

**5.** While the court is sympathetic to defendants' desire to avoid entry of an injunction if there is a legitimate basis for that result, defendants' request that the court proceed to consider issues not initially presented is potentially unfair to the plaintiffs. If defendants wish to put the plaintiffs to their proof on issues other than the choice of forum and choice of law clauses, contrary to what the court understands to have been the parties' initial mutual understanding, plaintiffs must have notice of defendants' change of position and an opportunity to be heard. In the present posture of the case, the court would have to address defendants' limitations argument without any input from plaintiffs.

**6.** The district court should be aware that the district court in Colorado recently reached a contrary decision. *Riley v. Kingsley Underwriting Agencies, Ltd., et al.,* No. 91 C 1411, 1991 WL 330770 (Aug. 30, 1991). This court has read the transcript of those proceedings. It does not appear that the court considered the conflict between the Lloyd's Act immunity and the non-fraud causes of action of the 1933 Act.