Kenneth F. BONNY, Francesca B.
Bonny and Robert D. Flesvig,
Plaintiffs–Appellants,

v.

The SOCIETY OF LLOYD'S, et
al., Defendants–Appellees.

Nos. 92–1662, 92–2771.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 4, 1992.

Decided Aug. 5, 1993.

Theodore William Grippo, Jr. (argued), Roy Thomas Simmons, Grippo & Simmons, Chicago, IL, for Kenneth F. Bonny, Francesca B. Bonny, and Robert D. Flesvig.

Timothy M. Maggio, Joseph E. Coughlin, Lord, Bissell & Brook, Chicago, IL, Sheila H. Marshall, Taylor R. Briggs (argued), Leboeuf, Lamb, Leiby & Macrae, New York City, for Society of Lloyd's.

Richard A. Wohlleber, George F. Venci, Jr., Chapman & Cutler, Chicago, IL, for Harris Bank Glencoe–Northbrook, N.A., Harris Trust and Sav. Bank and Bank of Montreal.

Bruce F. Hoffman, Jay M. Pollak, Pollak & Hoffman, Chicago, IL, for Northfield Venture, Inc. and Robert King.

John P. McGahey, James R. Denniston, Wilson, Elser, Moskowitz, Edelman & Dicker, Chicago, IL, Thomas W. Wilson, Jonathan C. Thau (argued), Wilson, Elser, Moskowitz, Edelman & Dicker, New York City, for Lime Street Underwriting Agencies Ltd., Robin C. Kingsley, Robert C. Hallam, Patrick M. Corbett and Bankside Underwriting Agencies Ltd.

Gary Kostow (argued), Suanne P. Hirschhaut, Kostow & Daar, Chicago, IL, for Alan J. Hunken.

Before CUMMINGS and CUDAHY, Circuit Judges, and LAY, Senior Circuit Judge.*

* Hon. Donald P. Lay, of the Eighth Circuit, sitting by designation.

LAY, Senior Circuit Judge.

Kenneth Bonny, Francesca Bonny and Robert Flesvig brought claims in federal district court alleging that they were fraudulently, and in violation of various federal and state securities laws, induced to become members of the Society of Lloyd's (Lloyd's) and to participate as underwriters in several insurance syndicates. Suit was brought against Lloyd's, a British entity; Lime Street Underwriting Agencies Ltd., Bankside Underwriting Agencies Ltd., Robin Kingsley, Robert Hallam and Patrick Corbett, all British corporations or citizens (collectively referred to as "Members' Agents"); Northfield Venture, Inc. and its principals Robert King and Alan Hunken, all American defendants (collectively referred to as "Local Defendants"); Harris Bank Glencoe–Northbrook, Harris Trust & Savings Bank, and the Bank of Montreal ("Bank defendants").

On February 24, 1992, the district court denied plaintiffs' motion for preliminary injunction based upon the lack of likelihood of success on the merits due to the presumptive validity of forum selection clauses contained in the contractual agreements. 784 F.Supp. 1350. The injunction sought to bar the defendants from drawing upon a letter of credit issued by Harris Bank which the plaintiffs were required to obtain as a condition of their membership. Plaintiffs appealed on March 23, 1992 (No. 92–1662).

On May 29, 1992, the district court granted Lloyd's and the Managing Agents' motions to dismiss based on contractual forum selection and arbitration clauses designating England as the forum for dispute litigation and arbitration.[1] In a clarification of this order on June 26, 1992, the district court ruled that its prior dismissal applied to *all* defendants, explaining that the non-moving local defendants were dismissed *sua sponte*. Plaintiffs thereafter appealed the order of dismissal (No. 92–2771). These two appeals were consolidated for oral argument and disposition; we now affirm the respective orders of the district court.

---

1. Because the enforcement of the clauses was dispositive, the district court did not rule on the defendants' other grounds for dismissal.

## FACTS

The Society of Lloyd's operates one of the largest insurance markets in the world.[2] Individuals invest in Lloyd's and thereby obtain the right to participate in Lloyd's insurance underwriting syndicates by becoming an Underwriting Member (a "Name"). A "Managing Agent" manages the syndicate and owes a contractual duty to Names to manage their syndicates with reasonable care. Most syndicates specialize in the underwriting of a particular type of insurance. A Name decides how much he or she wishes to invest in each syndicate based on limited financial information. Many Names join more than one syndicate in order to spread their underwriting across different types of insurance or across different syndicate managements. A Name is not allowed to deal directly with Lloyd's and must designate a "Member's Agent" to handle the Name's affairs. By agreement, Members' Agents owe a fiduciary duty to their Names and must act in the sole interest of their principal Name. In making decisions regarding in which syndicates to invest, Names rely to a great extent on the advice of their Members' Agents.

Each Name is responsible only for his or her share of a syndicate's losses, but liability is unlimited for that share. Similarly, each Managing Agent is independent of every other agent, responsible only for his or her own syndicate.

To become a Name, a candidate must prove financial means. The candidate must also deposit a specified sum via an irrevocable letter of credit issued by a Lloyd's approved bank in favor of Lloyd's. This serves as security and allows the Name to continue underwriting. When insurance claims exceed premium available, Lloyd's makes "cash calls" upon the Names responsible for those claims. If the cash calls are not paid, the Name's security can be used for that purpose.

Northfield, King and Hunken are agents of Lloyd's and Lime Street[3] operating in the United States. Kenneth Bonny was solicited by King in Illinois to invest in Lloyd's. Francesca Bonny invested based on the representations made to her husband. Robert Flesvig, who joined the suit in the Amended Complaint, was solicited by Hunken. King and Hunken introduced the Plaintiffs to Lime Street, the designated "Members' Agent." Lime Street compensated King and Hunken for the introduction.

Plaintiffs traveled to England and executed a General Undertaking for Membership that included both forum selection and choice of law clauses.[4] They also signed a Members' Agent Agreement providing that disputes between Names and Members' Agents will be arbitrated in England under English law.

To secure their obligations to Lloyd's, each of the plaintiffs issued irrevocable letters of credit in favor of the Society and Council of Lloyd's.[5] These letters were secured, issued and confirmed by the banks which are named defendants. The syndicates in which the plaintiffs participated ultimately experienced large losses resulting in calls in excess of 300,000 pounds.[6]

2. Lloyd's provides facilities for its members to engage in the insurance business and regulates the activities that are undertaken in its facilities. It is a market somewhat analogous to the New York Stock Exchange.

3. Lime Street Underwriting is a Members' Agent affiliated with Lloyd's.

4. The General Undertaking provides in relevant part:

2.1 The rights and obligations of the parties arising out of or relating to the Member's membership of, and/or underwriting of insurance business at, Lloyd's and any other matter referred to in this Undertaking shall be governed by and construed in accordance with the laws of England.

2.2 Each party hereto irrevocably agrees that the courts of England shall have exclusive jurisdiction to settle any dispute and/or controversy of whatsoever nature arising out of or relating to the Member's membership of, and/or underwriting of insurance business at, Lloyd's....

5. Kenneth Bonny's letter is in the amount of 105,000 pounds; Francesca Bonny's letter is in the amount of 150,000 pounds and Robert Flesvig's letter is in the amount of 110,000 pounds.

6. By letters from Lloyd's dated July 9, 1991, plaintiffs were informed of their net underwriting position: Kenneth Bonny's total loss was 293,791.65 pounds; Francesca Bonny's total loss was 45,405 pounds; and Robert Flesvig's total loss was 213,986.54 pounds.

Plaintiffs claim that the non-bank defendants, in order to induce them into investing in and remaining members of Lloyd's, failed to disclose material facts and risk factors concerning investment in Lloyd's, particularly through Lime Street.[7] They brought suit under Sections 12(1) and 12(2) of the Securities Act of 1933 and under Section 10(b) of the Securities Exchange Act of 1934. Plaintiffs also allege RICO violations and causes of action in common law for fraud, negligence and breaches of duty.

## DISCUSSION

### I. Enforceability of the forum selection clause

■ The enforceability of forum selection and choice of law provisions are questions of law which we review de novo. *Hugel v. Corporation of Lloyd's*, 999 F.2d 206 (7th Cir.1993); *Northwestern Nat'l Ins. Co. v. Donovan*, 916 F.2d 372, 375 (7th Cir.1990); *Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953, 956 (10th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 658, 121 L.Ed.2d 584 (1992).

Plaintiffs claim that the district court erred in dismissing their amended complaint. They argue that the forum selection and choice of law clauses should be held void because together they violate public policy by prospectively waiving plaintiffs' Securities Act remedies.[8] Plaintiffs rely on *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985), where the Supreme Court stated in dicta that forum selection and choice of law provisions which operate as prospective waivers of statutory antitrust claims would not be enforced as against public policy. *Id.* at 637 n. 19, 105 S.Ct. at 3359 n. 19. Plaintiffs argue that they are being deprived of all substantive rights under the federal securities laws and should therefore be relieved of their agreement on public policy grounds.

The enforceability of forum selection clauses in international agreements is governed by the Supreme Court's decision in *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972).[9] In enforcing a forum selection clause in a contract between Zapata, an American corporation, and Unteweser, a German corporation, the Court held that forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances." *Id.* at 10, 92 S.Ct. at 1913. The Court reasoned that:

> The expansion of American business and industry will hardly be encouraged if, notwithstanding solemn contracts, we insist on a parochial concept that all disputes must be resolved under our laws and in our courts.... We cannot have trade and commerce in world markets and international waters exclusively on our terms, governed by our laws, and resolved in our courts.

*Id.* at 9, 92 S.Ct. at 1912. Indeed, "[t]he elimination of all such uncertainties by agreeing in advance on a forum acceptable to both parties is an indispensable element in inter-

---

**7.** They claim that they were not told that their investments were highly risky, that they were put by their Members' Agent in highly speculative syndicates, that those syndicates were operating at the high-risk edge of the insurance industry, and that years of high-risk conduct permitted by Lloyd's would lead to enormous losses. Plaintiffs also claim that although Lime Street promised to put them into a "balanced and diversified spread of syndicates to minimize risk," plaintiffs were in fact put into some of the worst performing syndicates at Lloyd's.

**8.** The anti-waiver provisions of the United States' securities laws provide as follows:
Any condition, stipulation, or provision binding any person acquiring any security to waive compliance with any provision of this subchapter or of the rules and regulations of the Commission shall be void.

15 U.S.C. § 77n (1982).
Any condition, stipulation, or provision binding any person to waive compliance with any provision of this chapter or of any rule or regulation thereunder, or of any rule of an exchange required thereby shall be void.
15 U.S.C. § 78cc(a) (1982).

**9.** Plaintiffs initially attempt to characterize their agreement with Lloyd's as a domestic securities transaction. There is no question that the transaction involved here is truly international. The plaintiffs contracted with Lloyd's, a distinctively British entity, to become members of an insurance market that underwrites insurance worldwide. The Agreements were executed in London and the plaintiffs traveled to England for that purpose. All but three of the non-bank defendants in the case are British.

national trade, commerce, and contracting."
*Id.* at 13–14, 92 S.Ct. at 1914–15.

In *Scherk v. Alberto–Culver Co.*, 417 U.S.
506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974), the
Court enforced an arbitration agreement in a
securities case arising out of an international
contract. The Court stated:

> [U]ncertainty will almost inevitably exist
> with respect to any contract touching two
> or more countries, each with its own sub-
> stantive laws and conflict-of-laws rules. A
> contractual provision specifying in advance
> the forum in which disputes shall be liti-
> gated and the law to be applied is, there-
> fore, an almost indispensable precondition
> to achievement of the orderliness and pre-
> dictability essential to any international
> business transaction.

*Id.* at 516, 94 S.Ct. at 2455. In *Scherk,* the
Court found it significant that the agreement
was "truly international." *Id.* at 515, 94
S.Ct. at 2455. Similarly, in *Mitsubishi Mo-
tors,* 473 U.S. at 629, 105 S.Ct. at 3355, the
Court stated that "concerns of international
comity, respect for the capacities of foreign
and transnational tribunals, and sensitivity to
the need of the international commercial sys-
tem for predictability in the resolution of
disputes require that we enforce the parties'
agreement, even assuming that a contrary
result would be forthcoming in a domestic
context." *Id.*

■ The presumptive validity of a forum
selection clause can be overcome if the resist-
ing party can show it is "unreasonable under
the circumstances." *M/S Bremen,* 407 U.S.
at 10, 92 S.Ct. at 1913. The Supreme Court
has construed this exception narrowly: fo-
rum selection and choice of law clauses are
"unreasonable" (1) if their incorporation into
the contract was the result of fraud, undue
influence or overweening bargaining power,
*Carnival Cruise Lines, Inc. v. Shute,* 499
U.S. 585, ——, 111 S.Ct. 1522, 1528, 113
L.Ed.2d 622 (1991); *M/S Bremen,* 407 U.S.
at 12–13, 92 S.Ct. at 1914; (2) if the selected
forum is so "gravely difficult and inconven-
ient that [the complaining party] will for all
practical purposes be deprived of its day in
court." *Id.* at 18, 92 S.Ct. at 1917; or (3) if
enforcement of the clauses would contravene
a strong public policy of the forum in which
the suit is brought, declared by statute or
judicial decision. *Id.* at 15, 92 S.Ct. at 1916.

■ Plaintiffs have not met their burden
in proving the clauses unreasonable. There
is no evidence in the record that the forum
selection clause was tainted by fraud, undue
influence or overweening bargaining power.[10]
Moreover, plaintiffs do not argue that they
would suffer severe physical and financial
hardship by being compelled to litigate in
England.[11]

■ As to the third factor, we have seri-
ous concerns that Lloyd's clauses operate as
a prospective waiver of statutory remedies
for securities violations. By including the
anti-waiver provisions in the securities laws,

10. Plaintiffs contended at oral argument that the forum selection and choice of law clauses were induced by fraud. They claim that defendant did not disclose that under British law, Lloyd's en-joys immunity from certain causes of action for damages and that Lloyd's and Lime Street are "exempt" persons under the English securities laws and are therefore exempt from the provi-sions that protect investors. We need not ad-dress the accuracy of plaintiffs recitation of En-glish law at this juncture. We note only that a party to a contract has an obligation to read its provisions. It is a fundamental principle of con-tract law that a person who signs a contract is presumed to know its terms and consents to be bound by them. 3 A. Corbin, *Corbin on Con-tracts* 607 (1989). Nothing excuses the plaintiffs for not being aware of the substantive provisions of English law that the forum selection clause incorporates into their agreement.

11. According to the Affidavit of Kenneth Bonny, submitted in support of his motion for an Emer-gency Injunction Pending Appeal, Mr. Bonny's letter of credit has at this point been completely drawn down and as a result he presently suffers financial hardship. However, there is no evi-dence that at the time of executing the General Undertaking for Membership, Mr. Bonny suf-fered severe physical or financial hardship such that an agreement to litigate all disputes in Eng-land would be deemed fundamentally unfair. Al-though Mr. Bonny's current financial situation is quite bleak, a party's financial status at any given time in the course of litigation cannot be the basis for enforcing or not enforcing a valid forum selection clause. Because this court denied plaintiffs' motion to enjoin Lloyd's from drawing on the letters of credit pending appeal, Lloyd's was well within its rights in doing so and its actions have no effect on our determination of the enforceability of the forum selection clause.

Congress made clear that the public policy of these laws should not be thwarted. *Cf. Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth,* 473 U.S. 614, 631 n. 19, 105 S.Ct. 3346, 3356 n. 19, 87 L.Ed.2d 444 (1985) (stating that prospective waivers of statutory antitrust remedies would likely be voidable as contrary to public policy). The complaint in this case asserts that defendants violated provisions of the 1933 Securities Acts in dealing with American citizens. To allow Lloyd's to avoid liability for putative violations of the 1933 Act would contravene important American policies unless remedies available in the selected forum do not subvert the public policy of that Act. This is the fundamental question we face here.

In the present case, we are satisfied that several remedies in England vindicate plaintiffs' substantive rights while not subverting the United States' policies of insuring full and fair disclosure by issuers and deterring the exploitation of United States investors. *See Roby v. Corporation of Lloyd's,* 996 F.2d 1353, 1364–66 (2d Cir.1993). The record makes clear that English law affords plaintiffs a cause of action for fraud similar to that available for the claims they have brought under Rule 10b–5. Plaintiffs can bring claims for common law fraud and rescission of their contract made in reliance on the misrepresentation. In addition, several of the specific Lloyd's agreements require disclosure of material information to American investors with failure to do so giving rise to

liability for breach of contract.[12] Moreover, under their contracts, Member's Agents owe a fiduciary duty to Names which provides a further basis for suit. Finally, § 47 of the Financial Services Act creates penalties for misleading statements or omissions made knowingly or recklessly. Although § 47 provides criminal sanctions, injured persons can obtain compensation pursuant to § 61 of the Act, which permits the court, upon the application of the Secretary of State, to order injunctions to restrain violations of § 47 and to make remedial orders. While § 61 does not create a private right of action, upon a finding of criminal liability under § 47, plaintiffs could potentially receive some compensation for their injuries. More importantly, such criminal penalties serve as an important deterrent against exploitation of United States investors.

Plaintiffs contend that the Lloyd's Act of 1982 bars them from pursuing these particular causes of action.[13] The Lloyd's Act of 1982, however, does not grant statutory immunity in the event of bad faith. *Riley v. Kingsley Underwriting Agencies, Ltd.,* 969 F.2d 953, 958 (10th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 658, 121 L.Ed.2d 584 (1992). Moreover, affidavits submitted in this case indicate that the immunity offered under the Lloyd's Act is not a bar to suit, but is rather a defense that Lloyd's must affirmatively plead. The court will not raise the

---

**12.** For example, the Members' Agent's Agreement requires each Members' Agent to:

> disclose ... in good time any information in its possession relating to any of the Contracted Syndicates, or to any syndicate which the Agent has advised the Name to join ... which could reasonably be expected to influence the Name in deciding whether to become or remain a member of, or to increase or reduce his participation in, any such syndicate, and use its reasonable endeavours to obtain any such information.

The Managing Agent's Agreement likewise requires Managing Agents to disclose in good time relevant information to the Name or his Member's Agent.

**13.** Section 14(3) of The Lloyd's Act of 1982 provides:

> Subject to subsections (1), (4) and (5) of this section, the Society shall not be liable for dam-

ages whether for negligence or other tort, breach of duty or otherwise, in respect of any exercise of or omission to exercise any power, duty or function conferred or imposed by Lloyd's Acts 1871 to 1982 or any byelaw or regulation made thereunder—
> (d) in so far as relates to the exercise of, or omission to exercise, disciplinary functions, powers and duties; or
> (e) in so far as relates to the exercise of, or omission to exercise, any powers, functions or duties under byelaws made pursuant to paragraphs (21), (22), (23), (24) and (25) of Schedule 2 to this Act;
> unless the act or omission complained of—
> (i) was done or omitted to be done in bad faith; or
> (ii) was that of an employee of the Society and occurred in the course of the employee carrying out routine or clerical duties, that is to say duties which do not involve the exercise of any discretion.

defense *sua sponte* and Lloyd's has stipulated that it would not raise this defense.

■ We conclude that the available remedies and potential damage recoveries suffice to deter deception of American investors and to induce the disclosure of material information to investors. It is true that enforcement of the Lloyd's clauses will deprive plaintiffs of their specific rights under § 12(1) and § 12(2) of the Securities Act of 1933. However, the fact that an international transaction may be subject to laws and remedies different or less favorable than those of the United States is not alone a valid basis to deny enforcement of forum selection, arbitration and choice of law clauses. In our recent opinion in *Hugel v. Corporation of Lloyds*, 999 F.2d 206 (7th Cir.1993), we adopted the reasoning of the Second Circuit in rejecting a similar claim:

> It defies reason to suggest that a plaintiff may circumvent forum selection and arbitration clauses merely by stating claims under laws not recognized by the forum selected in the agreement. A plaintiff simply would have to allege violations of *his country's* tort law or *his country's* statutory law or *his country's* property law in order to render nugatory any forum selection clause that implicitly or explicitly required the application of the law of another jurisdiction. We refuse to allow a party's solemn promise to be defeated by artful pleading. In the absence of other considerations, the agreement to submit to arbitration or the jurisdiction of the English courts must be enforced even if that agreement tacitly includes the forfeiture of some claims that could have been brought in a different forum.

*Id.* (citing *Roby v. Corporation of Lloyds*, 996 F.2d 1353 (2d Cir.1993)). Perhaps the United States' securities laws would provide plaintiffs with a greater chance of success under lighter scienter and causation requirements. However, enforcing the clauses here simply means that plaintiffs will have to structure their case differently than if they were proceeding in federal district court. *See Riley*, 969 F.2d at 958. Given the international nature of the transactions involved here, and the availability of remedies under British law that do not offend the policies behind the securities laws, the parties' forum selection and choice of law provisions contained in the agreements should be given effect.

## II. *Dismissal of the complaint as to the local defendants*

■ Plaintiffs next appeal the district court's *sua sponte* dismissal of the case as to the local defendants.[14] They argue that the forum selection clause does not apply to non-contracting parties such as the American defendants. They argue that the district court's ruling is unconscionable in that it requires an Illinois plaintiff suing an Illinois defendant for acts which occurred in Illinois to bring its claim in England under English law.

■ A court may grant a motion to dismiss even as to nonmoving defendants where the nonmoving defendants are in a position similar to that of moving defendants or where the claims against all defendants are integrally related. *Rosser v. Chrysler Corp.*, 864 F.2d 1299 (7th Cir.1988); *Silverton v. Department of Treasury*, 644 F.2d 1341, 1345 (9th Cir.), *cert. denied*, 454 U.S. 895, 102 S.Ct. 393, 70 L.Ed.2d 210 (1981); *Loman Dev. Co. v. Daytona Hotel & Motel Suppliers, Inc.*, 817 F.2d 1533, 1537 (11th Cir.1987).

Here, the plaintiffs allege that the local defendants are agents of Lloyd's and Lime Street. The Complaint alleges that the omission and misrepresentations are attributable to all defendants. Counsel for both sides agree that the parties are indispensable to each other. We thus hold that the district court did not err in determining, under *Rosser*, that the local defendants are integrally related to the moving defendants such that the suit against all defendants should be kept in a single forum. We recognize, however, that dismissal of the suit as to the local defendants could have the effect of unjustly

---

**14.** Defendant Northfield Venture Inc. is an Illinois corporation engaged in the investment business whose principal place of business is Northbrook, Illinois. Robert King is the chief executive officer of Northfield and is a resident of Glencoe, Illinois. Alan Hunken has an ownership interest in Northfield and is a resident of Northbrook, Illinois.

allowing these defendants to escape suit if an English court cannot gain personal jurisdiction over them or cannot serve them with process. We thus direct the district court to qualify its dismissal of the entire case on the condition that the local defendants agree to appear voluntarily in England if suit is re-filed there.[15]

For the foregoing reasons, the judgment of the district court is affirmed.

---

15. Counsel for the local defendants stated at oral argument that they would not object to such a condition.