GOVETT AMERICAN ENDEAVOR
FUND LTD., Plaintiff–
Appellant,

v.

Arthur I. TRUEGER, Berkeley International Capital Corporation; Govett & Company Ltd, a Jersey, Channel Islands Corporation; Berkeley Govett International Limited, a Jersey, Channel Islands Corporation, Defendants–Appellees.

No. 95–16498.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 5, 1996.

Decided May 1, 1997.

James E. Lyons, Skadden, Arps, Slate, Meagher & Flom, San Francisco, CA; Frank Rothman, Skadden, Arps, Slate, Meagher & Flom, Los Angeles, CA, for plaintiff-appellant.

Joshua R. Floum, Heller, Ehrman, White & McAuliffe, San Francisco, CA; Peter A. Wald, Latham & Watkins, San Francisco, CA, for defendants-appellees.

Before: GOODWIN, WIGGINS and NOONAN, Circuit Judges.

Opinion by Judge NOONAN; Dissent by Judge GOODWIN.

NOONAN, Circuit Judge:

The American Endeavour Fund, Limited, (American Endeavor) appeals the dismissal by the district court of its action under the Racketeer Influenced Corrupt Organization Act, (RICO), 18 U.S.C. § 1961, *et seq.* and the statutory and common law of California brought against Arthur I. Trueger (Trueger); Berkeley International Capital Corporation

(Berkeley); Govett & Company Limited (Govett); and Berkeley Govett International Limited (BGIL). The district court found that all of American Endeavor's causes of action were governed by Jersey law according to agreements between the parties and that "[b]ecause Jersey law does not recognize RICO, the Court lacks subject matter jurisdiction." Holding that the defendants could not by contract insulate themselves from civil liability based on crimes committed in California, we reverse the district court and remand.

## ALLEGATIONS

■ As the case was dismissed on the pleadings, we accept the allegations of the complaint as true without passing on their truth in fact. We summarize the allegations, supplemented by the agreements submitted by the parties, as follows:

Trueger is a citizen of the United States and a resident of San Francisco, California. From the inception of American Endeavor in 1988 until his resignation in 1993, Trueger was one of its six directors and played a major role in the investments of American Endeavor in question here. He was the chairman of the Board of BGIL and also dominated the affairs of Govett, BGIL, and Berkeley.

Govett is a financial service group, incorporated under the laws of the Bailiwick of Jersey, Channel Islands. Its shares are traded on the London Stock Exchange and through American Depository Receipt facilities on NASDAQ; it engages in substantial activity in California directly and through its affiliates and subsidiaries. BGIL is also organized under the laws of Jersey. It is a wholly-owned subsidiary of Govett. Berkeley is organized under the laws of California and has its principal place of business in San Francisco. It is also a wholly-owned subsidiary of Govett.

American Endeavor is a corporation organized under the laws of Jersey and has its principal place of business in Jersey. It is a closed-end investment fund, scheduled to be dissolved on September 30, 1996. Its shares are traded on the London Stock Exchange. The purpose of American Endeavor is to invest in United States dollar-denominated debt securities, with equity participation features attached. In fact 90% of American Endeavor's assets have been invested in the securities of United States companies.

At the time of its formation in 1988 American Endeavor made an agreement with BGIL, by which BGIL would manage its assets subject to overall policy guidelines from American Endeavor. The agreement (the Management Agreement) provided that BGIL would give investment advice to American Endeavor, but permitted it to obtain investment advice as it chose. On the same day, the Management Agreement was executed, at Trueger's direction BGIL hired Berkeley to provide investment advice (the Consultancy Agreement). Berkeley undertook to identify suitable investment opportunities for American Endeavor in the United States. Govett entered into an agreement with American Endeavor on the same date undertaking to assure that BGIL and Berkeley would discharge all of their obligations (the Undertaking Agreement).

Paragraph 13 of the Management Agreement between American Endeavour and BGIL provided:

(a) The Managers shall not be under any liability or account of anything done or suffered or omitted to be done by the Manager in good faith in accordance with or in pursuance of any request or advice of the Company or the Directors....

(b) The Managers shall not be liable to the Company or any Member for any loss sustained by the Company or any member or in any of the Investments except a loss arising from wilful default or negligence in the performance or non-performance by the Managers or any person designated by them of their obligations or duties hereunder and in particular (but without limitation) this protection shall extend to any loss (not being attributable to wilful default or negligence as aforesaid) sustained by the Company or Member or in any of the Investment as a result of any forged document or signature.

Paragraph 23 of the Management Agreement provided:

This Agreement shall be governed by and construed in accordance with the laws of Jersey and the parties hereto hereby submit to the non-exclusive jurisdiction of the Royal Court of Jersey.

Paragraph 6.1 of the Consultancy Agreement between BGIL and Berkeley provided

The Consultant further undertakes that in performing its duties it shall comply with all relevant laws, and will procure, as far as is practicable that the Company and the Manager will comply with the provisions of any applicable United States Federal or State legislation.

Paragraph 9.3 provided

This Agreement is governed by and shall be construed in accordance with, the laws of Jersey and the parties hereby submit to the non-exclusive jurisdiction of the Royal Court of Jersey.

The Undertaking Agreement between Govett and American Endeavor provided:

This undertaking shall be governed by Jersey law.

Trueger, Berkeley and BGIL formed an enterprise or group of individual organizations associated in fact and directed by Trueger which induced American Endeavor to invest in companies in the United States that secretly paid them kickbacks for arranging American Endeavor's investment in them and misappropriated the assets of American Endeavor for the purpose of enriching themselves. Trueger, Berkeley and BGIL directed American Endeavor to invest more than $8 million in convertible debentures issued by Integral Systems Inc., a software company with its principal place of business in Walnut Creek, California, without disclosing their control of, and fees received from, this entity. Berkeley and BGIL furnished American Endeavor with a memorandum proposing an investment in the debt and stock of American Marketing International Inc. and AMI Acquisition Corporation, whose principal place of business is in Southern California, and intentionally omitted from the memorandum that they would receive a $450,000 fee from the subjects of the investment. Berkeley and BGIL sent a memorandum to American Endeavor relative to American Endeavor's investment in the debentures and stock of Evans Rents, a California corporation with its principal place of business in Compton, California; they intentionally omitted from this memorandum that they were being paid a fee of $914,000 for recommending the investment. Berkeley and BGIL recommended by memorandum an investment by American Endeavor in the debentures and stock of Franchise Enterprises, Inc., a company located in North Carolina; they intentionally omitted from this memorandum that they would receive a fee from this company of $2.2 million and they also omitted from this memorandum that Franchise Enterprise, Inc. had received a qualified opinion from its auditors.

By these and other illegal acts the defendants engaged in a pattern of crimes as defined by 18 U.S.C. § 1961(5). In furtherance of their racketeering they also committed wire fraud in violation of 18 U.S.C. § 1343. They also committed violations of § 10 of the Securities Act of 1933 and of § 12(2) of the Securities Act of 1934; and these acts of securities fraud were predicate acts of racketeering under 18 U.S.C. § 1961(1)(d). The fees that they secretly accepted were also bribes taken in violation of California Penal Code § 641.3 and constituted further predicate acts of racketeering.

The defendants further committed common law fraud against American Endeavor and breached their fiduciary duty to American Endeavor; BGIL breached its professional duty as investment advisor to American Endeavor; Berkeley breached its duty as investment consultant to BGIL and American Endeavor; Govett breached its duty of care to American Endeavor. BGIL breached its contract with American Endeavor and Govett breached its contract with American Endeavor. All the defendants made negligent misrepresentations to American Endeavor. All of the defendants are guilty of converting fees that were the property of American Endeavor. All the defendants are liable to American Endeavor for unjust enrichment. All the defendants are accountable to American Endeavor. The total damages are not less than $20 million, tripled.

Such are the allegations of American Endeavor.

## PROCEEDINGS

American Endeavor filed a complaint containing these allegations in the district court on February 8, 1995. The defendants moved to dismiss. The law of the Balliwick of Jersey was supplied in a declaration by Sir Peter Crill, formerly the Bailiff or Chief Justice of the Royal Court of Jersey and currently a Commissioner of the Royal Court. He was retained by the defendants to state the law of Jersey. Jersey law was also supplied in a declaration by William James Bailhache, an advocate practicing in Jersey, who was retained by the plaintiffs.

On June 30, 1995 the district court reviewed the allegations and the argument of the defendants that the choice of law provisions in the three agreements that Jersey law should "govern the entirety of the parties' relationship." The court cited with approval a California case involving a choice of law agreement, *Nedlloyd Lines BV v. Superior Court*, 3 Cal.4th 459, 11 Cal.Rptr.2d 330, 834 P.2d 1148 (1992). The district court also quoted from *Roby v. Lloyd's*, 996 F.2d 1353 (2d Cir.1993), *cert. denied*, 510 U.S. 945, 114 S.Ct. 385, 126 L.Ed.2d 333 (1995), that there was a "strong public policy in favor of forum selection and arbitration clauses." The district court also cited for enforcement of a choice law clause, *Bonny v. Lloyd's*, 3 F.3d 156, 162 (7th Cir.1993), *cert. denied*, 510 U.S. 1113, 114 S.Ct. 1057, 127 L.Ed.2d 378 (1994). The district court concluded: "Under the reasoning of *Nedlloyd*, *Roby*, and *Bonny*, all of Govett's arguments have been addressed and found to be without merit.... Jersey law therefore applies. Because Jersey law does not recognize RICO, the Court lacks subject matter jurisdiction and defendants' motion to dismiss is GRANTED."

American Endeavor appeals.

## ANALYSIS

■ The RICO Count. The defendants put their reliance on the clause in each of the agreements that Jersey law governs. Of course it does. Whatever law is chosen to provide the measure—whether it is Jersey law itself, or California law, or federal common law—the interpretation of the three contracts by a court would be the same. When a contract says it shall be governed by Jersey law, Jersey law it shall be. "*La convention fait le loi des parties,*" as the Jersey maxim has it. What the parties agree to, they agree to. In the language of the Jersey lawyers whose declarations have been filed with the district court, it is the "plain, natural meaning" of each contract.

That doesn't help the defendants as to the RICO count. American Endeavor in this count is not charging them with breach of contract but with torts that also constitute crimes under the laws of the United States. The defendants cannot insulate themselves from liability for these claims by invoking the law of an island that does not have a statute like the Racketeer Influenced and Corrupt Organizations Act.

■ What the contract means, or how the contract is to be construed, or how the parties' relationship is to ruled by the contract, is not determinative of whether defendants have committed the crimes alleged by American Endeavor. In this civil suit, of course, the alleged crimes are treated as torts giving rise to damages. The principle is the same. A contract specifying the law of a foreign jurisdiction as the law controlling contractual duties cannot be used as a defense to claims of torts committed in violation of federal criminal statutes.

■ The general rule is well-known: the parties may make their own choice of law unless the choice is "forbidden by some public policy," *Lauritzen v. Larsen*, 345 U.S. 571, 588, 73 S.Ct. 921, 931, 97 L.Ed. 1254 (1953), or "fundamental public policies might be offended by applying the parties' choice of law," *Consul Ltd. v. Solide Enterprises, Inc.*, 802 F.2d 1143, 1147 (9th Cir.1986). That RICO embodies a fundamental federal policy can scarcely be disputed. Although not as fundamental as the policy against slavery enforced against a defense of contractual agreement, *United States v. King*, 840 F.2d 1276 (6th Cir.1988), RICO represents a fundamental choice by Congress to employ the heavy artillery of federal law against a vari-

ety of organized criminal endeavors involving security fraud, wire fraud, and bribery. To permit this fundamental choice of public policy to be frustrated by private choice would be to exalt autonomy in contract over the laws of the United States; to do so would be contrary to the universal consensus on the appropriate limit to autonomy. See Hessel E. Yntema, " 'Autonomy' in Choice of Law", 1 *Am. J. Comp. L.* 341, 353 (1952).

Jersey is an island 12 miles west of the Cotentin Peninsula of France; it is about 10 miles across and five miles from north to south and has an area of 44 square miles; its population is about 84,000. If contracts made in Jersey could grant immunity from the criminal laws of the United States, Jersey would indeed be The Mouse That Roared. But we do not premise our decision on the size of this island. The principle enunciated is the same as to any attempt by contract referring to foreign law to save from criminal or tort liability acts performed in the United States by citizens of the United States involving investments in companies in the United States. Contract just doesn't do the job.

■ The Securities Act Claims. A portion of the RICO count is based on allegations that the defendants violated the 1933 and 1934 Securities Acts. Both of these statutes contain explicit provisions making void any contract that avoids the protections afforded by the acts. As we have just held in *Richards v. Lloyd's,* 107 F.3d 1422 (9th Cir.1997), these statutory provisions must be observed. For that reason we have not agreed with the reasoning of the Second Circuit in *Roby* and the Seventh Circuit in *Bonny,* and the district court's understandable reliance on those cases turns out to have been unfounded. For the reasons stated in *Richards,* to the extent that the agreements' reference to Jersey law operated as a prospective waiver of rights afforded by the two Securities Acts, the Jersey law does not apply; and for this reason, independently of the general applicability of RICO, the RICO count is good as it incorporates a pattern of violations of the Securities Acts.

The California and Common Law Claims. Whether the district court should return jur-

isdiction of these claims presents a familiar question of pendent jurisdiction. The principles are well established and set out, for example, in *The Republic of Philippines v. Marcos,* 862 F.2d 1355 (9th Cir.1988). On remand it will be for the district court to apply the principles to the case before it. As to these counts there appears to be no difficulty in using Jersey law to determine if fraud, bribery, breach of fiduciary duty, breach of professional duty, negligence, or unjust enrichment occurred.

For the reasons stated the judgment of the district court is REVERSED and the case REMANDED.

GOODWIN, Circuit Judge, dissenting:

I would affirm the dismissal of the case for lack of subject matter jurisdiction. The parties chose Jersey law to govern their relationship. Jersey law does not recognize a RICO cause of action and therefore no subject matter jurisdiction lies in the federal courts.

### I. *Scope of the Clause*

The choice-of-law provision agreed to by the parties states that: "This Agreement shall be governed by and construed in accordance with the laws of Jersey and the parties hereto submit to the non-exclusive jurisdiction of the Royal Court of Jersey." The majority completely fails to analyze the scope of this clause and assumes that it cannot encompass the claims American Endeavor Fund Limited ("American Endeavor") alleges. This failure leads the majority to an incorrect conclusion.

Clearly, "the clause refers to more than construction of the agreement," *Moses v. Business Card Express, Inc.,* 929 F.2d 1131, 1139–40 (6th Cir.1991), or "governed by" would be surplusage. I agree with the California Supreme Court that "[t]he phrase 'governed by' is a broad one," *Nedlloyd Lines B.V. v. Superior Court,* 3 Cal.4th 459, 11 Cal.Rptr.2d 330, 336, 834 P.2d 1148, 1154 (1992), and that "[w]hen ... sophisticated, commercial entities agree to a choice-of-law clause like the one in this case, the most reasonable interpretation of their actions is

that they intended for the clause to apply to all causes of action arising from or related to their contract," *id.* at 335, 834 P.2d at 1153, "including tortious breaches of duties emanating from the agreement or the legal relationships it creates." *Id.* at 337, 834 P.2d at 1155.

American Endeavor's RICO cause of action arises from and relates to its contracts with the defendants. The RICO cause of action is predicated on alleged acts of securities and wire fraud that, if proved, would also constitute breaches of the various contracts defendants entered into with American Endeavor. *See Northeast Data Sys., Inc. v. McDonnell Douglas Computer Sys. Co.*, 986 F.2d 607, 609–10 (1st Cir.1993) (holding that contract related claims fall within the scope of a choice-of-law clause); *Lambert v. Kysar*, 983 F.2d 1110, 1121–22 (1st Cir.1993) (holding that "contract-related tort claims involving the same operative facts as a parallel claim for breach of contract" fall within the scope of a forum selection clause). Further, the defendants would not have been in a position to defraud American Endeavor but for these contracts. The defendants undertook to recommend investments to American Endeavor only because they had contractual obligations to do so.

American Endeavor's RICO claim arises from and relates to the contracts because the defendants' alleged acts constitute both a breach of contract and the predicate fraud for a RICO action, and because the contracts prescribed the relationship between the parties. Therefore, the acts upon which the RICO claim is predicated are covered by the choice-of-law clause. *See Manetti–Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 514 (9th Cir.1988) (holding that claims that "relate[ ] in some way to rights and duties enumerated in" a contract are within the scope of a choice-of-forum clause).

American Endeavor agreed that this action which arises from and relates to its contracts with the defendants would be governed by Jersey law. As Jersey law does not recognize a cause of action under RICO, no basis for federal jurisdiction exists.

## II. *Enforcement of the Choice-of-Law Clause*

In certain situations we do not enforce agreements entered into by the parties. Though American Endeavor contractually agreed that its current dispute with the defendants would be governed by Jersey law, it now argues that we should not enforce this agreement.

As the district court and this court's purported jurisdiction is premised on the existence of a federal question, federal common law controls the choice-of-law determination. *See Chuidian v. Philippine Nat'l Bank*, 976 F.2d 561, 564 (9th Cir.1992). Federal common law follows the Restatement (Second) of Conflict of Laws. *See Schoenberg v. Exportadora de Sal, S.A. de C.V.*, 930 F.2d 777, 782 (9th Cir.1991). The Restatement states:

> The law of the state chosen by the parties ... will be applied ... unless ... application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

Restatement (Second) Conflict of Laws § 187(2) (1971).

This private law action involves alleged fraud upon a foreign plaintiff by U.S. and foreign defendants. Certainly the United States has an interest in preventing its citizens from defrauding foreigners. This interest, however, is not materially greater than the interests of Jersey in preventing foreigners from defrauding its citizens. Jersey's interest in providing a remedy for its defrauded citizens is just as strong as the United States' interest in preventing wrong by its citizens, and thus under the Restatement, there is no reason to disturb the parties freely negotiated choice of Jersey law.

Further, enforcing the parties' agreement does not grant the defendants' immunity from our criminal laws. Nothing in the contracts prevents the United States Attorney from prosecuting the defendants under RICO or any other criminal statute. Finally,

simply because civil RICO and the federal courts are not available to American Endeavor, it is not without redress for any alleged wrongs done by the defendants. Jersey provides remedies for fraud, breach of contract, breach of fiduciary duty, and conspiracy, and American Endeavor can pursue these causes of action in state court or in the courts of Jersey. This is the bargain that American Endeavor made and I see no reason to allow it to avoid this contractual obligation.